**Slip Op. 02-97**

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: CARMAN, CHIEF JUDGE

| | |
|---|---|
| BETHLEHEM STEEL CORPORATION, *et al.,* : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| UNITED STATES, : | Court No. 00-03-00116 |
| : | |
| Defendant, : | |
| : | |
| and : | |
| : | |
| POHANG IRON AND STEEL CO., LTD., : | |
| : | |
| Defendant-Intervenor. : | |
| : | |

[*Remand Redetermination Pursuant to Bethlehem Steel Corporation et al. v. United States*, December 6, 2001 is sustained.]

     *Dewey Ballantine LLP (John A. Ragosta, Jennifer Danner Riccardi, Navin Joneja)*, Washington, D.C., for Plaintiffs.

     *Robert D. McCallum, Jr.*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *A. David Lafer*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice; *William L. Olsen*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Michele D. Lynch*, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel, Washington, D.C., for Defendant.

     *Kaye Scholer LLP (Donald B. Cameron, Julie C. Mendoza, Brady W. Mills)*, Washington, D.C., for Defendant-Intervenor.

                                      Dated: August 27, 2002

**OPINION**

**CARMAN, CHIEF JUDGE:** Bethlehem Steel Corporation and U.S. Steel Group, a Unit of

USX Corporation ("Plaintiffs") and Pohang Iron and Steel Co., Ltd. ("POSCO" or "Defendant-

Intervenor") challenge the Department of Commerce's ("Commerce") determination in *Remand*

*Determination Pursuant to Bethlehem Steel Corporation, et al. v. United States, Slip-Op. 01-95*

*(August 8, 2001)* ("*Remand Redetermination*").  This Court has jurisdiction to hear this case

pursuant to 28 U.S.C. 1581(c) (2000).  For the reasons that follow, this Court sustains

Commerce's *Remand Redetermination* in its entirety.

**BACKGROUND**

On August 8, 2001, this Court remanded this case for Commerce to further investigate

and explain whether two programs by the Government of Korea ("GOK") provided

countervailable subsidies to POSCO: 1) the direct provision of infrastructure at Asan Bay and 2)

the reduction of import duties on steel slab by the GOK.  *See Bethlehem Steel Corp. v. United*

*States*, 162 F. Supp. 2d 639, 645, 648 (Ct. Int'l Trade 2001).  In the *Remand Redetermination*,

Commerce determined that the infrastructure at Asan Bay does not provide a countervailable

benefit to POSCO and that although the import duty reduction program is countervailable,

POSCO received no measurable benefit from it.  *See Remand Redetermination* at 4-5, 9.

I.      *Commerce's determination as to infrastructure benefits*

This Court remanded the issue of whether POSCO received infrastructure subsidies at

Asan Bay due to Commerce's failure to properly address this issue, focusing instead upon whether POSCO's lease terms constituted a countervailable subsidy. *See Bethlehem Steel*, 162 F. Supp. 2d at 644. Commerce was instructed to investigate Plaintiffs' subsidy allegations as to roads, industrial water facilities, distribution depots and electric power stations at Asan Bay. *See Bethlehem Steel*, 162 F. Supp. 2d at 645. Commerce accordingly solicited and verified additional information on this issue. *See Remand Redetermination* at 2. With regard to POSCO's presence in Asan Bay, Commerce had previously discovered that POSCO leased a port berth and maintained a warehouse at Asan Bay. *See id.* Commerce verified that 1) the port berth "is not part of the Poseung Industrial Complex, which is one of five industrial sites within Asan Bay"; and 2) the Inchon Port Authority, rather than the government agencies responsible for construction in the industrial site, was responsible for the port berths at Asan Bay. *Id.* at 3 (citing *Remand Verification Report for the Government of Korea (GOK) in the Court of International Trade (CIT) Remand of the Countervailing Duty Investigation of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea* (Nov. 26, 2001) at 5-6, Pub. Doc. 258, POSCO's Jan. 22, 2002 Pub. Attach. 4 at 4-5 ("*GOK Verification Report*")).

As part of its investigation of roads at Asan Bay, Commerce verified that the bridge and major highway at Asan Bay are part of the West Coast Highway system connecting two cities, thus constituting part of Korea's general highway and road system. *Remand Redetermination* at 3. The government agency Ministry of Construction and Transportation ("MOCAT") is responsible for the road system. *See id.* (quoting *GOK Verification Report* at 4, POSCO's Jan. 22, 2002 Pub. Attach. 4 at 3). With respect to the roads within the industrial complex, Commerce verified they are public roads used by the general public. Furthermore, Commerce

verified that "POSCO does not use most of the roads within the complex; rather, it uses the country's general road system." *Remand Redetermination* at 4. Commerce concluded POSCO did not receive a financial contribution from the GOK with regard to the highway and bridge at Asan Bay and did not receive a countervailable benefit as to the roads within the industrial complex. *See id.*

With regard to the electric power stations, Commerce verified that the electricity is supplied by the national utility company KEPCO and the power plant is located near Kia in Asan Bay. *See GOK Verification Report* at 6, POSCO's Jan. 22, 2002 Pub. Attach. 4 at 5. It found that POSCO pays for electricity services based upon the applicable general tariff schedule charged to all electricity customers. *See Remand Redetermination* at 5. The same is true as to telephone and water services, even though POSCO receives water from a treatment center within the industrial estate. *See id.* It also verified that there are no distribution depots constructed by the GOK at Asan Bay that could provide a benefit to POSCO. *See Remand Redetermination* at 5. Commerce therefore concluded POSCO did not receive a financial contribution or countervailable benefit from water facilities, distribution depots, and electric power stations at Asan Bay. *See id.*

II. *Commerce's determination as to reduction of import duties on slab*

The import duty reduction program at issue in this case works as follows: Interested parties request reductions in import duties generally in response to market conditions. If they meet the criteria established in Korea's statutes and regulations, the government may approve a tariff reduction upon import. *See* CTL Plate Remand Questionnaire Response of the Government

of Korea (Sept. 7, 2001), at 11-13, Pub. Doc. 250, Def.'s Pub. Ex. 6 ("GOK Questionnaire Response"). In the case of slab, "the Korean government monitors the domestic supply of slab. When either the domestic supply drops below a certain threshold or the domestic industry so requests, the Korean government reduces the tariff rate on steel slab. This reduced tariff rate is available to the entire steel industry, irrespective of the manner in which the individual companies ultimately use the slab[.]" *Bethlehem Steel*, 162 F. Supp. 2d at 647 (footnote omitted). Commerce had found in the final results and first remand redetermination that the program is not countervailable, but this Court remanded the issue a second time because Commerce had failed to investigate the program. *See id.* at 641, 646.

Upon solicitation and verification of additional information, Commerce found that the program could not be classified as an export subsidy because the applicability of the reduced rate was not conditioned upon the use of the slab in a product to be exported. *See Remand Redetermination* at 6. However, Commerce concluded that the program is specific under section 771(5A) of the Tariff Act of 1930 . *See id.* at 7. It verified that the reduced rate of one percent had been applied to imports during the first part of 1998 but that the general tariff rate of three percent had been applied during the second half of 1998. *See id.* at 8. POSCO had imported slab during the first half of 1998 at the one percent tariff rate. *See id.* Based on this information, Commerce found POSCO received a financial contribution and countervailable benefit for the first half of 1998. *See id.* at 8-9. However, Commerce found "POSCO did not receive a measurable benefit from this program as the calculated benefit under this program was less than 0.005 percent and therefore had "no impact on the *ad valorem* subsidy rate calculated in the final determination." *Id.* at 9.

### STANDARD OF REVIEW

This Court will sustain a final determination of Commerce unless it is found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The same standard of review applies to the review of a remand determination as to the review of the original determination. *See Laclede Steel Co. v. United States*, 125 F. Supp. 2d 525, 530 (Ct. Int'l Trade 2000); *see also Viraj Group, Ltd. v. United States*, 193 F. Supp. 2d 1331, 1335 (Ct. Int'l Trade 2002) (applying the substantial evidence standard to review a remand determination). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . Moreover, [t]he court may not substitute its judgment for that of the [agency] when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Transcom, Inc. v. United States*, 121 F. Supp. 2d 690, 693 (Ct. Int'l Trade 2000) (internal quotations and citations omitted). In examining statutes, the Court applies the two-part analysis of *Chevron U.S.A. Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Fabrique de Fer de Charleroi, SA v. United States*, 166 F. Supp. 2d 593, 598 (Ct. Int'l Trade 2001). Under *Chevron*, the Court examines whether the relevant statute addresses the specific question at issue, and if not, whether the agency's statutory interpretation is reasonable in light of the overall statutory scheme. *See Chevron U.S.A., Inc.*, 467 U.S. 842-43.

## DISCUSSION

I.      *Contentions as to Countervailability of Infrastructure Benefits*

    A.      *Plaintiffs' Contentions*

Plaintiffs argue Commerce's decision as to the countervailability of infrastructure subsidies should be reversed and remanded.  (Pl.'s Dec. 17, 2001 Br. at 2.)  They present three contentions in support of their argument.

First, Plaintiffs argue Commerce based its conclusion upon irrelevant factors.  (*Id.* at 8.) They assert that the fact "that POSCO's facilities . . . are not located within a specific location within the Asan Bay site is irrelevant to the inquiry of whether POSCO received infrastructure subsidy benefits at Asan Bay."  (*Id.* at 9.)  Plaintiffs also assert it is irrelevant whether the Inchon Port Authority or some other government agency is responsible for the port berths; in either case POSCO is being provided a benefit from the GOK.  (*Id.*)  In addition, Plaintiffs state Inchon Port Authority is a division of the Ministry of Maritime Affairs and Fisheries, which does play a role in the development of the Poseung Industrial Complex, but Commerce did not investigate its involvement.  (*Id.* at 9-10.)

Second, Plaintiffs assert faulty reasoning led to Commerce's determination that POSCO did not receive a benefit from the provision of roads at Asan Bay.  (*Id.* at 10.)  They contend that Commerce only referred to a MOCAT report to support its finding that the highway and bridge at Asan Bay are part of the general infrastructure, and Commerce did not address the issue of the use of other roads "in and around" Asan Bay.  (*Id.*)  Plaintiffs state, "The mere fact that these secondary roads, intended to benefit only a few, appear on a national roads plan does not demonstrate that they were in fact intended to benefit society as a whole. . . . That the roads

appear on a national roads plan also has no implications for whether or not their provision was d*e facto* specific." (*Id.* at 11 (citing 19 U.S.C. § 1677(5A)(D)(1995)).) Plaintiffs maintain that while Commerce found the GOK recovers the cost of constructing the roads by including it in the price of the land sold in the industrial estate, POSCO does not own land there and therefore benefitted from use of the roads without payment. (*Id.* at 11-12.) Plaintiffs maintain that Commerce improperly relied upon the rationale that the public could, in theory, use the roads while they allege the public does not, in fact, use the roads. (*Id.* at 12.) They maintain the roads were not constructed for the public welfare but rather to develop industrial sites for sale to individual companies. (*Id.* at 13.)

Third, Plaintiffs argue that this Court previously rejected Commerce's reasoning as to the countervailability of provisions of industrial water facilities, distribution depots, and electric power stations. Plaintiffs note that in reviewing the first remand, this Court stated the fact that POSCO paid comparable leasing fees was not dispositive of whether there was a countervailable subsidy. (*Id.* at 14 (citing *Bethlehem Steel*, 162 F. Supp. 2d at 644).) Plaintiffs maintain Commerce is again mistakenly focusing upon the fact that POSCO paid market rates for water, electric, and telephone services. (*Id.*) Plaintiffs argue instead that the salient issue is whether the particular infrastructure was built for the public welfare. (*Id.* at 15.) Plaintiffs distinguish discounts on services from infrastructure benefits by noting "an infrastructure subsidy benefit inquiry relates to the benefit received from the construction of the infrastructure. . . ." (*Id.* at 17.) Plaintiffs reason that whether the facilities in question were specifically built for POSCO is irrelevant because for there to be a financial contribution, all that is required is that the infrastructure not be for the public welfare. (*Id.* at 15.)

In light of these three arguments, Plaintiffs request a remand directing Commerce to apply a .74 percent countervailing duty rate, the rate Commerce calculated as to the infrastructure benefits received by POSCO at Kwangyang Bay. (*Id.* at 18.)

B.      *Defendant's and Defendant-Intervenor's Contentions*

Defendant and Defendant-Intervenor support Commerce's determination as to non-countervailability of infrastructure subsidies with four contentions. First, to demonstrate that Commerce made its decision after a detailed investigation, Defendant-Intervenor points to the remand questionnaires issued to the GOK and POSCO that address this Court's concerns and Commerce's four-day "exhaustive" verification. (POSCO's Jan. 22, 2002 Pub. Br. at 9-11.)

Second, Defendant-Intervenor posits Commerce addressed whether POSCO received a benefit from use of the roads in and around Asan Bay. (*Id.* at 13.) It cites Commerce's verification that POSCO did not use most of the roads in the industrial complex and that the roads within the industrial estate are public roads. (*Id.* (citing *Remand Redetermination* at 4).) As to the secondary roads, Defendant and POSCO assert Commerce found those roads to be part of the country's national highway system and that they were built prior to the development of the industrial estates at Asan Bay. (POSCO's Jan. 22, 2002 Pub. Br. at 13; Def.'s Br. at 7.) The bridge and highway used to access Asan Bay were found to be part of the general highway and road system as well and are therefore exempt from the definition of a financial contribution. (Def.'s Br. 5-6.) POSCO states Commerce found that the public did in fact use the roads. (POSCO's Jan. 22, 2002 Pub. Br. at 14.)

Third, Defendant and Defendant-Intervenor argue Commerce's decision that POSCO did

not benefit from industrial water facilities, distribution deports, and electric power stations at Asan Bay is supported by substantial evidence. Commerce verified that the water lines servicing Asan Bay also service the populations to the west and northeast of Asan Bay and that the water is being provided in the region between the towns of Daesan and DanJim. (*Id.* at 15-16.) Defendant and Defendant-Intervenor argue the water facilities clearly were not specifically built to service POSCO or the steel industry. (*Id.* at 16; Def.'s Br. at 10.) As to the electric power stations, Commerce verified that the electric power plant is not located at Asan Bay and that the plant was built many years before the industrial estates at Asan Bay were developed. Therefore, Defendant and Defendant-Intervenor argue the plant was not built to service only POSCO. (POSCO's Jan. 22, 2002 Pub. Br. at 16-17; Def's. Br. at 9.) In addition, because POSCO paid market rate fees for water and electricity, they argue Commerce correctly concluded that POSCO received no benefit. (POSCO's Jan. 22, 2002 Pub. Br. at 16, 17; Def.'s Br. at 9-10.)

Fourth, Defendant-Intervenor argues Plaintiffs' request for a directed remand to apply the subsidy rate of .74 percent is unsupported by record evidence and is contrary to law. Defendant-Intervenor considers this a "facts available" rate for which Plaintiffs have not offered any evidence to justify its application. (*Id.* at 18-19.)


II.     *Commerce's determination that POSCO did not receive a financial contribution and countervailable benefit from infrastructure subsidies is supported by substantial evidence or otherwise in accordance with law.*

In order for Commerce to assess countervailing duties upon investigation of a subsidy, it must find that the subsidy is one in which an authority 1) provides a financial contribution to a person, 2) a benefit is thereby conferred, and 3) the subsidy is specific. *See* 19 U.S.C. §

1677(5)(A)-(B).  In the present case, Commerce found that POSCO did not receive a financial

contribution from the highway and bridge over Asan Bay or from the industrial water facilities,

distribution depots, and electric power stations, and it did not receive a benefit from the roads

within Asan Bay.  *See Remand Redetermination* at 3-5.  Therefore, Commerce concluded that the

provision of infrastructure at Asan Bay was not a countervailable subsidy.  This Court finds

Commerce's determination to be supported by substantial evidence or otherwise in accordance

with law.

The definition of a "financial contribution" includes "providing goods or services, *other*

*than general infrastructure.*"  19 U.S.C. § 1677(5)(D)(iii) (emphasis added).  Commerce's

regulations define "general infrastructure" as "infrastructure that is created for the broad societal

welfare of a country, region, state or municipality." 19 C.F.R. § 351.511(d)(1999).  The

definition of a "benefit" includes a "case where goods or services are provided, if such goods or

services are provided for less than adequate remuneration. . . ."  19 U.S.C. § 1677(5)(E)(iv); *see*

*also* 19 C.F.R. § 351.511(a)(1).

Commerce properly determined that POSCO did not receive a countervailable benefit

from the roads within Asan Bay.  As noted earlier, Commerce has verified that POSCO is not

located within the industrial estates at Asan Bay.  *See Remand Redetermination* at 4 (citing

*Remand Verification Report for Pohang Iron and Steel Co., Ltd. (POSCO) in the CIT Remand of*

*the Countervailing Duty Investigation of Certain Cut-to-Length Carbon-Quality Steel Plate from*

*the Republic of Korea* (Nov. 26, 2001), at 2, 3, Prop. Doc. 257, available at Def.'s Conf. Ex. 3 at

2-3).  In response to Commerce's questionnaire, the GOK explained, "Up through 1998, the

GOK's major expenditures in and around the Asan Bay area were for the development of land for

industrial sites that would be sold to individual companies, but it also constructed *basic*

*infrastructure* such as roads, industrial water conduits and sewage disposal facilities. . . . The

infrastructure provided by the GOK . . . was constructed for the use of all companies located in

the Asan Bay area. . . . [T]he roads and industrial water supply systems . . . were constructed to

cover all companies *as well as the population located in Asan Bay area*." CTL Plate Remand

Questionnaire Response of the Government of Korea (Sept. 7, 2001) at 2, Prop. Doc. 249,

POSCO's Jan. 22, 2002 Pub. Attach. 1 at 4 (emphasis added) ("GOK Questionnaire Response").

With regard to the roads in Asan Bay, the GOK informed Commerce that the Korean

Land Development Corporation ("Koland"), a government investment company, is responsible

for the land in the industrial estates and that the cost of roads constructed by Koland within the

industrial estates is included in the sales price of land sold within the estate. *See id.* at 4, 8-9,

POSCO's Jan. 22, 2002 Pub. Attach. 1 at 6, 10-11. Where the GOK has constructed roads

outside the industrial estates but still within the Asan Bay area, the cost is either recovered

through tolls or, in some cases, the road is toll free. *See id.* at 9, POSCO's Jan. 22, 2002 Pub.

Attach. 1 at 11. The GOK indicated that in addition to any harbor usage fees and leasing fees,

"POSCO paid fees or charges for the usage of facilities such as electricity, water, roads, etc." *Id.*

at 8, POSCO's Jan. 22, 2002 Pub. Attach. 1 at 10. The GOK emphasized that "all roads are part

of the country's road and highway system." *Id.* at 10, POSCO's Jan. 22, 2002 Pub. Attach. 1 at

12. Commerce "verified that POSCO does not use most of the roads within the complex; rather,

it uses the country's general road system" and that "the roads within the industrial estate are

public roads[.] . . . These roads are publicly traveled roads and are used by the public and not just

by POSCO." *Remand Redetermination* at 4 (citing *GOK Verification Report* at 6, available at

POSCO's Jan. 22, 2002 Pub. Attach. 4 at 5).  It further verified that the "secondary roads" in Asan Bay are part of the national road and highways system.  *See Remand Redetermination* at 11-12 (citing *GOK Verification Report* at Ex. GOK Remand 5, available at POSCO's Jan. 22, 2002 Pub. Attach. 5 at 5-11).  Based on this information, this Court holds Commerce's decision that infrastructure subsidies from use of roads at Asan Bay are not countervailable is supported by substantial evidence or otherwise in accordance with law.

Commerce's decision as to benefits from industrial facilities, distribution depots, and electric power stations is also supported by substantial evidence.  As noted, the GOK informed Commerce that the industrial water supply system was constructed for use by all companies as well as the general population in the Asan Bay area.  *See* GOK Questionnaire Response at 2, POSCO's Jan. 22, 2002 Pub. Attach. 1 at 4.  It submitted a map of the Asan Industrial Water Supply System which Commerce verified.  *See* GOK Questionaire Response Ex. G-1 at 5-6, available at POSCO's Jan. 22, 2002 Pub. Attach. 1 at 18-19 ("Water System Map"); *GOK Verification Report* at 6, POSCO's Jan. 22, 2002 Pub. Attach. 4 at 5.  The map shows that the system provides water in the region between the towns of Daesan and DangJim.  *See* Water System Map, POSCO's Jan. 22, 2002 Pub. Attach. 1 at 18-19; *GOK Verification Report* at 6, POSCO's Jan. 22, 2002 Pub. Attach. 4 at 5.  The Korea Water Resource Corporation, which services the water, is under the administration of MOCAT, which is also responsible for construction of the water lines.  *See GOK Verification Report* at 6, POSCO's Jan. 22, 2002 Pub. Attach. 4 at 5.  Based on the evidence submitted, it was reasonable for Commerce to conclude that the water system was not built specifically for POSCO and served to benefit all entities in the industrial estates as well as the population in the surrounding area.  Therefore Commerce

properly found there was no financial contribution by provision of the water facilities.

Commerce's determination that there was also no countervailable benefit to POSCO because it

paid usage fees at the market rate, thus providing adequate remuneration for the benefit received,

was also supported by substantial evidence. *See POSCO Verification Report* at 4, POSCO's Jan.

22, 2002 Pub. Attach. 3 at 5; CTL Plate Remand Questionnaire Response of Pohang Iron & Steel

Co., Ltd. (POSCO) (Sept. 7, 2001) at 3, Prop. Doc 249, POSCO's Jan. 22, 2002 Pub. Attach. 2 at

5 (POSCO Questionnaire Response).

Commerce also found that to receive electricity service from KEPCO, all companies must

make arrangements with KEPCO. *See GOK Verification Report* at 6, POSCO's Jan. 22, 2002

Pub. Attach. 4 at 5. During verification Commerce found "[t]here is a power plant that is located

up near Kia. It was not recently built." *Id.* POSCO pays market rate usage fees for electric

services. *Remand Redetermination* at 5; *POSCO Verification Report* at 4, POSCO's Jan. 22,

2002 Pub. Attach. 3 at 5. Commerce's determination that there was no financial contribution or

countervailable benefit from infrastructure subsidies from electric power stations is therefore

supported by substantial evidence or otherwise in accordance with law.


III.     *Contentions as to Countervailability of Import Duty Reduction Program*

For convenience, the Court first discusses the contentions of the Defendant-Intervenor as

to the import duty reduction program, followed by the contentions of the Plainitffs and

Defendant.

A.       *Defendant-Intervenor's Contentions*

Defendant-Intervenor contends this Court should reverse and remand Commerce's

decision that the import duty reduction program is countervailable for three reasons. (POSCO's Jan. 7, 2002 Pub. Br. at 1.) First, it argues the reduced tariff rate "does not constitute a 'financial contribution' on exports of subject merchandise." (*Id.* at 8.) POSCO argues that regardless of the duty rate on slab, there is no benefit from the program due to the existence of duty drawback. (*Id.* at 9.) Defendant-Intervenor insists Commerce failed to provide this Court with additional factual findings to support its decision that this program is countervailable and asserts the only effect of the program was to reduce the amount of duty paid at import and consequently to reduce the amount of duty drawback claimed upon exportation. (*Id.* at 9-10.)

Second, Defendant-Intervenor points to duty drawback received by DSM, another steel company under review, to show there was no "financial contribution." (*Id.* at 10-12.) It asserts Commerce incorrectly ignored the fact that duty drawback was received and found the existence of a financial contribution and benefit despite the full refund of the duties. (*Id.* at 12-13.) It maintains there was no financial contribution because "the GOK has no expectation of the ultimate payment of import duties under either the general tariff rate or the reduced tariff rate." (*Id.* at 13.) Defendant-Intervenor therefore argues the GOK did not forego revenue that was otherwise due. (*Id.*)

Third, Defendant-Intervenor posits the only benefit received from the import duty reduction program was as to merchandise sold in the domestic market and that there was no countervailable benefit upon the export of the subject merchandise. (*Id.* at 14.) Companies that imported at the reduced duty rate and used the subject merchandise in products sold domestically did not receive duty drawback and therefore benefitted from the lower rate, but the companies that exported the product containing the subject merchandise gained no benefit because they

received a refund of the duties they had paid upon import. (*Id.* at 14-15.) Thus Defendant-Intervenor claims the benefit from the import duty reduction program is tied to the domestic market of Korea. (*Id.* at 15-16.) It maintains that this Court's opinion in *Bethlehem Steel* did not instruct Commerce to find that the benefit from the program was not tied to a particular market or industry and that Commerce erred in failing to find tying in light of the evidence on the record. (*Id.* at 17.)

POSCO acknowledges this Court's statement that where a benefit associated with a domestic subsidy is not tied to a particular industry or market, Commerce will attribute the benefit to all products produced by a company. (*Id.* at 13-14.) At the same time, POSCO argues Commerce's reliance upon the statement was mistaken in that the Court specifically stated it was not drawing any conclusion about the countervailability of the program and that further investigation upon remand demonstrated that duty drawback was actually received. (*Id.* at 14.)

B.      *Plaintiffs' and Defendant's Contentions*

Plaintiffs and Defendant advance three arguments to demonstrate that Commerce properly countervailed the import duty reduction program. First, Plaintiffs assert this Court previously rejected POSCO's claim and that the reduction of import duties on slab does constitute a financial contribution. (Pls.' Jan. 22, 2002 Br. at 3.) Defendant states this Court provided explicit instructions concerning analysis of the program at issue and Commerce followed those instructions. (Def.'s Br. at 12.) Plaintiffs note under 19 U.S.C. § 1677(5)(D), a financial contribution includes "foregoing or not collecting revenue that is otherwise due," and they argue under the program at issue the GOK foregoes revenue that is otherwise due. (Pls.'

Jan. 22, 2002 Br. at 4 (citing 19 U.S.C. § 1677(5A)).)

Second, Plaintiffs counter this Court previously rejected POSCO's argument that duty drawback obviates the existence of a benefit. Plaintiffs cite this Court's statement that the countervailability of the program depends upon whether it conferred a specific benefit on a particular company or industry rather than upon whether the steel slab was used in the production of subject merchandise. (*Id.* at 5 (citing *Bethlehem Steel*, 162 F. Supp. 2d at 647).)

Third, Plaintiffs maintain POSCO and DSM received a countervailable benefit from the import duty reduction program. (*Id.* at 5.) Plaintiffs explain that absent a showing of tying, the benefit from a domestic subsidy is attributable to all production, including exports and therefore there was a countervailable benefit in the present case regardless of the availability of duty drawback. (*Id.* at 6.) Plaintiffs provide "[d]omestic subsidies are countervailable because, even though their availability is not contingent on export and they apply to products that may not be exported, producers of the subject merchandise are given trade-distorting competitive advantages that affect their entire operations." (*Id.*) In addressing POSCO's assertion that the benefits of the import duty reduction program are tied to a particular market, *i.e.* the domestic market, Plaintiffs contend "[t]ying . . . is an exception to the rule of fungibility and requires very particular findings." (*Id.* at 7.) Commerce did not find that such facts exist in this case. (*Id.*) Plaintiffs also assert that "a countervailable benefit is conferred despite the availability of duty drawback on exported products." (*Id.* at 8.) Plaintiffs argue that rather than being concerned with the existence of duty drawback, the issue of the second remand was the link between the exemption of import duties and exportation. (*Id.* at 9.) They maintain the link does not exist in this case. (*Id.*)

IV.     *Commerce's determination that the reduction of duty rates on the importation of slab is countervailable is supported by substantial evidence or is otherwise supported by law.*

Commerce found that 1) the import duty reduction program administered by the GOK is specific within the meaning of 19 U.S.C. § 1677(5A)(D)(iii), 2) POSCO received a financial contribution through the program, and 3) POSCO received a benefit but the benefit is not measurable. *See Remand Redetermination* at 7, 9. This Court affirms Commerce's determination as to the program's countervailability.

Under Korea's tariff system, a foreign government, domestic industry or importer may request a change in the general tariff rate. *See GOK Verification Report* at 2, Def.'s Pub. Ex. 12 at 2. For a reduction of a tariff rate to be approved, the requesting party must show that the reduction meets at least one of the system's three criteria of 1) stabilizing inflation, 2) stabilizing supply and demand, and 3) adjusting imbalances in tariff rates among similar items. *See id.* at 3, Def.'s Pub. Ex. 12 at 3. The application for reduction was granted for the first half of 1998 but was rejected for the second half. *See id.* The GOK indicated to Commerce that as long as the criteria of the system are met, "any imported product may be eligible for an import duty reduction for a particular period of time." GOK Questionnaire Response at 12, Def.'s Pub. Ex. 6 at 20. Additionally, Commerce verified "[t]here are no restrictions on items which are eligible for the quota reduction." *GOK Verification Report* at 3, Def.'s Pub. Ex. 12 at 3. The availability of the duty reduction was not based upon whether the slab was to be used in products that were intended for export; rather, the reduced rate was applicable to all imports of slab. *Remand Redetermination* at 6. Based upon this information, Commerce properly determined that the program could not be considered an export subsidy. *See Remand Redetermination* at 6; *see also*

19 U.S.C. § 1677(5A)(B) ("An export subsidy is a subsidy that is, in law or in fact, contingent

upon export performance, alone or as 1 of 2 or more conditions.").[1]

However, Commerce properly determined that the program at issue provides a "financial

contribution" to POSCO in that the GOK received a lower tariff payment upon the importation of

slab than it would have received if the program were not in effect. *See Remand Redetermination*

at 8-9; *see also* 19 U.S.C. § 1677(5)(D)(ii) (providing that "financial contribution" includes

"foregoing or not collecting revenue that is otherwise due"). While POSCO claims there is no

financial contribution because the GOK has not foregone revenue due to the eligibility for duty

drawback (POSCO's Jan. 7, 2002 Pub. Br. at 9), POSCO itself indicated in its responses to

Commerce's questionnaires that "POSCO did not claim duty drawback." POSCO Questionnaire

Response at 5, Def.'s Pub. Ex. 6.[2] As previously noted by this Court, "[t]he mere availability of

drawback . . . does not resolve the issue of whether the import duty reduction program is

countervailable." *Bethlehem Steel*, 162 F. Supp . 2d at 647. Commerce was reasonable in

finding that the GOK did forego the receipt of tariff duties at the three percent general rate which

it would otherwise have been entitled to, thus providing a financial contribution to POSCO.

Commerce also properly found that POSCO received a benefit from this program. Under

19 C.F.R. § 351.510(a)(1), "[i]n the case of a program, *other than an export program*, that

provides for the full or partial exemption or remission of an indirect tax or an import charge, a

---

[1] The program is also not an import substitution subsidy, which is defined as " a subsidy that is contingent upon the use of domestic goods over imported goods, alone or as 1 of 2 or more conditions." 19 U.S.C. § 1677(5A)(C).

[2] In its brief, POSCO refers only to the duty drawback received by DSM as evidence that drawback was in fact received. (POSCO's Jan. 7, 2002 Pub. Br. at 10-12.)

benefit exists to the extent that the taxes or import charges paid by a firm as a result of the program are less than the taxes the firm would have paid in the absence of the program." 19 C.F.R. § 351.510(a)(1) (emphasis added). As to this regulation, this Court has already stated that "when a government foregoes otherwise lawful taxes or import charges it is providing a countervailable benefit. The only exception contained in the regulation applies to export programs – i.e., programs that establish exportation of a finished product as a prerequisite to receiving an exemption of indirect taxes or import charges." *Bethlehem Steel,* 162 F. Supp. 2d at 648. POSCO had the burden to present evidence demonstrating a link between eligibility for the import duty reduction and exportation of the product in which the slab was used. *See RHP Bearings v. United States*, 875 F. Supp. 854, 857 (Ct. Int'l Trade 1995) (stating respondents bear the burden of providing accurate information in a timely manner). It presented no such evidence, and based upon the information it did present, Commerce found that the reduction applied to all imports of slab regardless of whether the slab was used in an exported finished product. *Remand Redetermination* at 6.

Commerce determined that the import duty reduction program is a domestic subsidy and is specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii). *See Remand Redetermination* at 7-8. The statute provides as follows:

> Where there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if one or more of the following factors exist:
>
> (I)  The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.
>
> (II)  An enterprise or industry is the predominant user of the subsidy.
>
> (III)  An enterprise or industry receives a disproportionately large amount of the

subsidy.

  (IV)   The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

19 U.S.C. § 1699(5A)(D)(iii)(I)-(IV).  In the present case, Commerce verified that 68 of the 105 requests for tariff reductions in the first half of 1998, and 51 of the 107 requests in the second half of 1998, were approved by the GOK.  *Remand Redetermination* at 7 (citing *GOK Verification Report* at 3, Def.'s Pub. Ex. 12 at 3).  Commerce reasonably interpreted this rate of approval to show that the recipients of tariff reductions are limited in number.  It also reviewed lists of items receiving tariff reductions between 1996 and 1998 and found the reductions to be "limited to certain industries, including the steel industry."  *Id.*; *see also* GOK Questionnaire Response Ex. G-11, Def.'s Pub. Ex. 6.  These findings, coupled with Commerce's finding that the steel industry is one of the few industries consistently granted tariff reductions, justify Commerce's determination that the import duty reduction program is specific.  *See Remand Redetermination* at 7.

POSCO argues that the only benefit from the import subsidy program comes from sales in the domestic market that did not obtain duty drawback.  (POSCO's Jan. 7, 2002 Pub. Br. at 14-17.)  Therefore POSCO maintains the benefit in this case is tied only to a particular market - Korea.  (*Id.* at 16.)  Despite POSCO's argument, Commerce found, "the tariff reduction on slab is applied to *all* imports *regardless of whether the slab is used in the production of products sold in the domestic or export markets*."  *Remand Redetermination* at 6 (emphasis added).  Thus receipt of the subsidy is not conditioned or "tied" to the sale of the product in any particular market.  The link between eligibility and sale in the domestic market is absent in this case.  When

there is a domestic subsidy which is not tied to a particular market, the subsidy is attributed to all products sold by a firm. *See* 19 C.F.R. § 351.525(b)(3). This Court holds that the determination of Commerce that the subsidy is countervailable is supported by substantial evidence or otherwise in accordance with law.

## CONCLUSION

This Court finds Commerce properly determined that 1) the provision of infrastructure benefits at Asan Bay by the GOK is not a countervailable subsidy and 2) the import duty reduction program administered by the GOK is a countervailable subsidy. The *Remand Redetermination* is affirmed in its entirety.

_____
Gregory W. Carman
Chief Judge

Dated: August 27, 2002
New York, New York